UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNNIE ALLEN,

                              Petitioner,

-vs-                                                    Case No.  8:07-cv-118-T-17TBM

SECRETARY, DEPT. OF CORRECTIONS,

                              Respondent.
_____/

## ORDER

        This cause is before the Court on Johnnie Allen's 28 U.S.C. § 2254 petition for writ of

habeas corpus.  Allen challenges his conviction and sentence entered by the Circuit Court for

the Sixth Judicial Circuit, Pinellas County, Florida.  Respondent filed a response to the petition.

(Doc. No. 17).  Allen did not file a reply to the response.

Background

        Johnnie Lee Allen, also known as Johnnie Lee Allan, was indicted in case no. CRC02-

954CFANO for the first degree murder of Angela Langley. Allen waived jury trial and was found

guilty as charged after a bench trial held February 11-12, 2003. Allen was adjudicated guilty of first degree murder and sentenced to life in prison.

Allen prosecuted a direct appeal in case no. 2D03-869, which resulted in a silent affirmance on December 12, 2003. *Allen v. State*, 865 So. 2d 488 (Fla. 2nd DCA 2003)[table]. He did not seek rehearing; nor did he pursue certiorari review.

Allen filed a pro se motion for postconviction relief, reflecting such was delivered to prison officials July 30, 2004, under Florida Rule of Criminal Procedure 3.850. The postconviction court denied the rule 3.850 without a hearing by order rendered October 1, 2004. Though appealing the summary order, Allen took a voluntary dismissal in case no. 2D04-4995 on February 1, 2005. *Allen v. State*, 892 So. 2d 1021 (Fla. 2nd DCA 2005)[table].

By then, he had filed another pro se rule 3.850 motion dated December 23, 2004. By order rendered January 19, 2005, the second rule 3.850 motion was dismissed as successive. Allen appealed, and on August 3, 2005, the state district court per curiam affirmed without written decision in case no. 2D05-1231. *Allen v. State*, 911 So. 2d 107 (Fla. 2nd DCA 2005)[table]. The mandate issued September 27, 2005.

Allen next filed a pro se petition for writ of habeas corpus, delivered to prison officials November 30, 2005, in which he sought permission to file a successive rule 3.850 motion. By order rendered January 18, 2006, the postconviction court denied the habeas application. Citing rule 3.850(h),[1] the state court pointed out he was free to file a second motion explaining his

---

[1] Rule 3.850(h)provides an application for writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to the rule shall not be entertained if it appears the applicant has failed to apply for relief, by motion, to the state sentencing court or the court has denied the applicant relief, unless it also appears the remedy by motion is inadequate or ineffective to test the legality of the detention.

reasons for not raising the claims in his original rule 3.850 motion. At that time, the state court would decide whether to entertain the motion under rule 3.850(f) governing successive motions.

Allen filed a pro se stale rule 3.850 motion dated February 15, 2006, under Florida Rule of Criminal Procedure 3.850. By order rendered March 31, 2006, the postconviction court applied rule 3.850's two-year time limit and the state's successive petition doctrine and dismissed the rule 3.850 motion. Allen appealed the dismissal. On September 27, 2006, the state district court per curiam affirmed without written decision in case no. 2D06-2614. *Allen v. State*, 939 So. 2d 99 (Fla. 2nd DCA 2006)[table]. The mandate issued October 18, 2006.

Allen next filed a pro se motion to correct sentence dated December 1, 2006, under Florida Rule of Criminal Procedure 3.800(a). By order rendered January 5, 2007, the postconviction court denied the rule 3.800(a) motion without a hearing. Allen did not appeal the rule 3.800 order denying relief.

The Present Federal Petition

The instant 28 U.S.C. § 2254 pro se petition dated January 12, 2007, is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. The AEDPA imposes a one-year limitations period on all habeas corpus  petitions, which in most cases, as in Allen's, begins to run from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). *Bond v. Moore,* 309 F.3d 770, 772 (11th Cir. 2002). The time during which a 'properly filed' application for state postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward the limitation period. See 28 U.S.C. § 2244(d)(2); *Artuz v. Bennett*, 531 U.S. 4 (2000). Under *Artuz*, the Court looks to

-3-

the state procedural rules governing filings to determine whether an application for state post-conviction relief is "properly filed." *Wade v. Battle*, 379 F.3d 1254, 1259-1260 (11th Cir. 2004).

For purposes of § 2244(d), Allen's trial-based judgment became final on March 11, 2004, that is, upon expiration of the time for seeking certiorari review in the Supreme Court. *See Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236-37 (11th Cir. 2004) (Florida prisoner's conviction became "final" for AEDPA purposes on date that 90-day period for seeking certiorari review with the Supreme Court expired). Accordingly, his AEDPA limitations period commenced the next day.

A period of 150 days elapsed which was not tolled until Allen [constructively] filed his first pro se rule 3.850 motion on July 30, 2004. This application, "properly filed" for tolling purposes only, was pending until dismissal of his ensuing rule 3.850 appeal on February 1, 2005. Notwithstanding, the AEDPA clock did not start then because he had filed another pro se rule 3.850 motion dated December 23, 2004, also a tolling motion under *Artuz*. The second rule 3.850 motion remained pending until September 27, 2005, when the mandate was issued in the ensuing summary appeal.

Allen's third pro se rule 3.850 motion dated February 15, 2006, was an improper application filed outside Florida's time limit governing rule 3.850 motions. The two-year time-bar of rule 3.850 motion was applied by the state court in dismissing the stale application. Because it was untimely under state law [rather than as a result of its successiveness], the third rule 3.850 motion does not qualify as a properly filed application under § 2244(d).[2] A state post-

---

[2] See also, *Folan v. McDonough*, case no. 06-14391 (11th Cir. April 4, 2007) (unpublished)(*Pace*-bound § 2254 appeal holding untimely 3.850 did not toll AEDPA limitations period where state court found it untimely, citing *Sweet* for proposition it is of no consequence state court alternatively addressed merits).

conviction petition rejected by the state court as being untimely under state law is not "properly filed" within the meaning of AEDPA's § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)(time limits, no matter their form, are 'filing' conditions)(internal quotation marks and alterations omitted).[3]

Moreover, Allen's state circuit court habeas petition does not qualify as a tolling application because it was not an application for state postconviction or other collateral review of the conviction or sentence within the meaning of § 2244(d)(2). This application only improperly sought for leave to file a successive rule 3.850 motion. A grant of such a petition was not a precondition to filing a successive rule 3.850 application and in any case, a habeas petition does not supplant compliance with rule 3.850's filing requirements. Put another way, a habeas petition asking only to file another rule 3.850 attack is not part of the ordinary review process in Florida for collaterally attacking a conviction or sentence.        But, even assuming that the pro se habeas petition qualifies as a "properly filed" application for state postconviction or other collateral review under § 2244(d)(2), nonetheless, tolling the period of time this application was pending will not render a timely result for Allen. Following the September 27, 2005, mandate in his second 3.850 appeal, a period of 32 days which was not tolled elapsed until November 30, 2005, when he constructively filed his pro se habeas petition. Such was no longer pending upon expiration of the time for appealing the order rendered January 18, 2006, that is on February 17, 2006. Thereafter, an additional period of 286 days which was not tolled

---

[3] In *Sweet v. Sec'y, Dep't of Corrections*, 467 F.3d 1311, 1315 (11th Cir. 2006), the Eleventh Circuit emphasized that "when a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims." 467 F.3d at 1318. The *Sweet* Court also stated that "when a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed.'" *Id.*

elapsed before he filed his pro se rule 3.800(a) motion on December 1, 2006. By then, the limitations period had expired. Thus, the rule 3.800 motion had no tolling effect. "[E]ven 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period." *Webster v. Moore,* 199 F.3d 1256, 1259 (11th Cir. 2000).

Thus, an aggregate period of over a year elapsed in which Allen did not have pending in the state courts a tolling application. His petition is subject to dismissal as untimely under § 2244(d).

The Supreme Court has never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations.[4]  Here, the Court need not address whether the preclusive effect of the statute of limitations can be avoided by equity because Allen's is not a case where extraordinary circumstances have prevented an otherwise diligent petitioner from timely filing his federal petition.

Among his various unnecessary delays, Allen unjustifiably delayed following the mandate in the collateral appeal of his denial of his second rule 3.850 motion before lodging the instant federal petition. Allen has not alleged a sufficient basis upon which to conclude he used due diligence in pursuing his grounds and seeking federal habeas corpus relief in a timely manner. Allen's petition is untimely, warranting dismissal under § 2244(d).

The Present Petition

Standard of Review

---

[4] The Eleventh Circuit has held that equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when extraordinary circumstances have prevented an otherwise diligent petitioner from timely filing his petition. *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001). Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, "it is 'appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence'" *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).

-6-

Section 2254, as amended by the AEDPA, establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec., Dept. Corr.*, 331 F.3d 764 (11th Cir. 2003), citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1849, 152 L.Ed.2d 914 (2002).

Under § 104 of the AEDPA, § 2254(d) now forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court, unless the petition can establish that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry* 124 S.Ct. 1, 4 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[5]

---

[5] In *Mitchell v. Esparza*, 124 S.Ct. 7 (2003), the Court reiterated that a state court's decision is "contrary to "our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id., citing Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Price v. Vincent*, 538 U.S. 634, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003); *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

The *Mitchell* Court observed, "[a] state court's decision is not "contrary to ... clearly established Federal law" simply because the court did not cite our opinions. *Id., citing Early* at 8, 123 S.Ct. 362. A state court need not even be aware of Supreme Court precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.*

Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme

In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Congress in passing the AEDPA also erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing. *Crawford v. Head*, 311 F.3d 1288, 1328-1329 (11th Cir. 2002); see 28 U.S.C. §2254(e)(2).[6]

## Discussion

## Ground One

In ground one of the instant petition, Allen contends the state did not prove "by substantial evidence" he was guilty of first degree murder beyond a reasonable doubt. Claiming circumstantial evidence of his guilt was insufficient to support the verdict, Allen concludes the state court erred in denying his acquittal motion.

---

Court case incorrectly. *Price, supra, citing, Bell*, 535 U.S. at 699; *Williams*, at 411. It is the habeas applicant's burden to show the state court applied that case to the facts of his case in an objectively unreason-able manner. *Price, citing, Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)(per curiam).

[6] Title 28 U.S.C. § 2254(e)(2) provides: If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
  (A) the claim relies on—
  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;
  and
  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. The Supreme Court has interpreted § 2254(e)(2) to mean that a petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). *Williams v. Taylor*, 529 U.S. at 433-34.

To the extent Allen relies on his state-law-based arguments, subject matter jurisdiction does not lie to address such. Whether the state's evidence is sufficient under Florida law to withstand a motion for judgment of acquittal with regard to the state's proof is solely a state law matter. Federal relief is available to correct only constitutional injury. *Wainwright v. Goode*, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983).

Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *See Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

Under Florida law, the trial court should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974). In "moving for a judgment of acquittal, a defendant in Florida admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the state that the trier of fact might fairly infer from the evidence. *Sutton v. State,* 834 So.2d 332, 334 (Fla. 5th DCA 2003).

When the evidence is wholly circumstantial, the state must present evidence inconsistent with any reasonable hypothesis of innocence. *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002); *see also, Blackwood v. State*, 777 So. 2d 399, 406 (Fla. 2000)(where state seeks to establish premeditation by circumstantial evidence, evidence relied upon must be inconsistent with every other reasonable inference). In a circumstantial evidence case, "the sole function of the Florida trial court ... is to determine whether there is a prima facie inconsistency between (a) the

evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve." *Gore v. State*, 784 So. 2d 418 (Fla. 2001).

This facet of Florida law is not a component of the constitutional analysis governing a challenge to the sufficiency of the evidence. With regard to a due process analysis, although each element of the offense must be established beyond a reasonable doubt, *Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson*, 443 U.S. at 316, 99 S.Ct. at 2787), the state is not required to rule out every hypothesis except that of the guilt of the defendant, *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001), citing *Jackson,* 443 U.S. at 326, 99 S. Ct. at 2792-93.

In addition, in Florida, the state may not rely upon evidence adduced by the defense to establish an essential element of the offense. Accordingly, the trial court may not deny a renewed motion for acquittal based on testimony of a defense witness. *Hampton v. State*, 662 So. 2d 992 (Fla. 2d DCA 1995). In contrast, a constitutional analysis can encompass the evidence in the defense's case to support an element of the offense. All the evidence must be reviewed as a whole in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789.

Allen did not refer to a federal guarantee nor constitutional case in seeking an acquittal at trial. In challenging the denial on appeal, he advanced constitutional argument which was not preserved for review. In Florida, to  preserve an argument for appeal, it must be asserted as the legal ground for the objection, exception, or motion below. *See Archer v. State,* 613 So. 2d 446, 448 (Fla. 1993); *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982). Florida Rule of

Criminal Procedure 3.380 requires that a motion for judgment of acquittal "fully set forth the grounds on which it is based." *See* Fla. R. Crim. Pro. 3.380(b).

The state did not assert the applicable lack-of preservation bar attendant Allen's constitutional arguments on appeal. Even if ground one is treated as exhausted only to the extent raised as a due process claim in his direct appeal, Allen does not meet his burden under the AEDPA's deferential standards of review of the silent affirmance on his issue. The silent decision is entitled to the same deference under the AEDPA standards of review as if the appellate court had entered written findings. *See Wright v. Sec. of Dept. of Corr.,* 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906, 123 S. Ct. 1511, 155 L. Ed. 2d 225 (2003).

To satisfy the constitutional requirement of due process in a criminal trial, the state must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. *In re Winship*, 397 U.S. 358, 364 (1970). In *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89, 61 L. Ed. 2d 560. The Court noted it is the duty of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and a reviewing court may not substitute its judgment as to whether it believes the evidence to be sufficient to sustain a conviction. *Id.; Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). Although the facts as they exist in the record may support opposing inferences, a federal habeas corpus court must presume that the jury resolved such conflicts in favor of the prosecution and against the petitioner. *See Heath v.*

*Jones*, 863 F.2d 815, 820 (11th Cir. 1989); *Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th

Cir. 1991). In other words, the federal courts must defer to the judgment of the jury in assigning

credibility to the witnesses and weighing the evidence. *Jackson,* 443 U.S. at 326.

      Allen is not entitled to relief because the state court's adjudication of the claim was not

contrary to clearly established federal law, did not involve an unreasonable application of clearly

established federal law, and was not based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings. The *Jackson* standard of review

is equally applicable to direct or circumstantial evidence. *Martin v. State of Alabama*, 730 F.2d

721, 725 (11th Cir. 1984). In Allen's case, there was direct as well as circumstantial evidence

adduced by the state at his bench trial from which a rational fact-finder could find Allen guilty

of first degree murder as charged beyond a reasonable doubt. The state's evidence revealed

the victim had been stabbed 55 times in the face, neck and shoulders. Five of the stab wounds

were independently fatal. (Resp. Ex. 1, V 2, T 70-71, 142) .  Video photographic evidence

depicted the bludgeoned victim kneeling over a couch in the living room, blood spatter on

furniture, carpet and walls. (Resp. Ex. 1, V 2 T 63-64, 77).  In addition, the video evidence

showed blood on kitchen cabinets and diluted blood was in the kitchen sink. (Resp. Ex. 1, V 2

T 60, 61). Upstairs, there was blood spatter on walls and blood drops on a dresser. (Resp. Ex.

1, V 2 T 69)

      The state's evidence tied Allen to the stabbing, establishing, among other things, Allen's

blood was on the victim's dresser upstairs, as well as in her car. (Resp. Ex. 1, V 3 T 263)

Testimony of a FDLE crime lab serologist further reflects that no one else's blood was found

in the victim's apartment other than that of Allen and the victim. (Resp. Ex. 1, V 3 T 263) This

compelling evidence of Allen's complicity was inconsistent with his claims that he had never

been upstairs in the victim's apartment or in her car. (Resp. Ex. 1, T 311) In addition, Allen's prints were found on the microwave and interior wall of the victim's apartment, which taken together with the blood comparison evidence, linked him to the murder. (Resp. Ex. 1, V 2 T 192)

Dorian White's testimony revealed that in conversations about the murder, Allen stated, "I just can't believe I let drugs take over my life like this, and allow me to do what I did" (Resp. Ex. 1, V 2 T 123). According to White, Allen seemed hurt and upset, repeating he could "not believe he did what he did." (Resp. Ex. 1 V 2 T 123-124)

In denying his motion for judgment of acquittal, the state trial court found, in relevant part:

> Yes. There's certainly substantial evidence as to premeditation.
>
> Generally a circumstantial case as far as the evidence as to who did it. But the significant circumstantial evidence is partially the things and the places he said he never was, and the evidence suggests or belies that, given the physical nature of the blood, and the other evidence they suggested.
>
> Never sold a microwave, got a witness and his prints on it. Never was in the car, got his blood in the car. Never was upstairs, got a mixture of the blood. And the significance of the mixture is – the implication is that the only way it could have gotten mixed together is if he was present when the homicide of violence occurred. That is the significance of the mixture in the different places.
>
> When you combine that with the fact that if it was just a circumstantial case, but you have got direct evidence. The statements of Dorian White. And while there's plenty of things to suggest his credibility could be in question, I E, [sic] he is out selling rocks of cocaine when he is supposed to be on furlough taking care of his affairs before he comes back to get his prison sentence. Not to mention other things that I'm sure you will remind me of in closing arguments related to him.
>
> The Court doesn't make a credibility call at this point as to evidence. The question is whether there's evidence, if believed, to allow the trier of fact to conclude that. And the implication from the statements he said he took from Mr. Allan was that he was remorseful for what he had done in relation to this

-13-

particular incident relating to the situation with Miss Langley. So even given the circumstantial nature of the rest of the evidence, there's direct evidence from the testimony of Mr. White. And as I say, at this point, I don't want to engage in a credibility call as far as that evidence is concerned.

So based on that, there's certainly sufficient evidence to allow the case to go to the trier of fact, and to deny the motion for judgment of acquittal. . . . .

(Resp. Ex. 1, V 3 R 279-281)

Allen endeavored to explain his blood on the victim's screen door, testifying at trial he collapsed there in a diabetic coma a month before. The EMS driver called on Allen's behalf did not recall seeing such blood when he picked up Allen. Active bleeding was a matter he would include in his report, and none was documented. (Resp. Ex. 1, V 3 R 296-297) Furthermore, as the EMS driver explained, explained closed head injuries, such as what Allen had, do not bleed. (Resp. Ex. 1, V 3 R 297) In addition, evidence indicated the victim kept her apartment very neat and tidy, and from such, a rational fact-finder could conclude any blood left there previously would have been cleaned up.

Allen gave inconsistent accounts about how he sustained the injuries to his hands. Although he told police he cut his hands while cutting trees for Postel (Resp. Ex. 1, V 3 T 227, 231), Postel's testimony reflects he had not cut trees with Allen on the date of the murder and never cut trees with him. (Resp. Ex. 1, V 2 T 131-132) At trial, Allen changed his story at trial, maintaining he sustained the cuts to his hands while moving furniture with his cousin. (Resp. Ex. 1, V 3 T 305)

Allen's shorts and a pillowcase both with blood were recovered from Allen's apartment. (Resp. Ex. 1, V 3 T 225) Although Allen claimed he had no bleach, the detective's testimony revealed there was a strong smell of bleach in his apartment and the testimony of the state's serologist established Allen's shorts had been bleached. (Resp. Ex. 1, V 3 T 225, 269)

Allen's own testimony comprised inculpatory evidence. Allen denied stabbing the victim. However, when asked how many times he swung the knife, he answered "Nine times." (Resp. Ex. 1, V 3 T 325)

Allen also claimed he was on crack and needing money, he tried to sell to sell meat, clothes, the microwave, and a television to his neighbors.[7] (Resp. Ex. 1, V 3 T 312) He admitted lying to police about selling a microwave. (Resp. Ex. 1, V 3 T 304)

The evidence also established opportunity of Allen, the victim's neighbor, to commit the murder. He acknowledged he was off work on the same day the victim was likely murdered, as she did not show up for work that day. (Resp. Ex. 1, V 3 T 317)

The state court as factfinder found there was time for reflection to establish premeditation. (Resp. Ex. 1, V 3 T 349) Further, it was committed by someone the victim knew, there being no forced entry to the residence the victim always kept locked. The fact-finder also found the print and blood evidence connected Allen to the murder. (Resp. Ex. 1, V 3 T 350)

The mere fact evidence in a state prosecution may give some support to a habeas petitioner's theory of innocence does not warrant the grant of habeas relief. *Conklin v. Schofield*, 366 F.3d 1191, 1200 (11th Cir. 2004). Viewing the state's evidence of Allen's guilt in the light most favorable to the state, it is objectively reasonable to conclude a reasonable trier of fact could find he committed the murder with premeditated intent. The silent affirmance resulted in a reasonable application of Jackson and a reasonable determination of the facts in light of the evidence.

Grounds Two through Six

---

[7] He claimed the television was one of three given him by his mother. (Resp. Ex. 1, V 3 T 312).

Grounds two through six of the federal petition comprise claims of proposed ineffectiveness of Allen's trial counsel. In ground two, he faults his counsel for not investigating evidence and witnesses to establish a coherent theory of the defense.

In ground three, he faults counsel for not investigating Lola Anderson to discredit the state's case against him. In ground four, he faults counsel for not investigating and impeaching Henry Collins.

In ground five, Allen claims counsel failed to investigate and impeach Dorain White. In ground six, Allen claims counsel misadvised him regarding the right to a jury trial.

All of these grounds are procedurally barred in entirety because Allen did not raise them in his first rule 3.850 motion and then raise them on appeal of the adverse result thereof. Allen did not raise any of his grounds in his rule 3.850 motion, the denial of which he abandoned via his voluntary dismissal of the ensuing summary appeal.[8] Ostensibly to show his grounds are properly exhausted, he points to his second rule 3.850 motion, which was dismissed as successive by order rendered January 19, 2005. *See e.g., Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997)(successive postconviction relief motions filed after the expiration of the time limit must be based on newly-discovered evidence).The postconviction court's express application of the state's successive petition doctrine was followed by a silent affirmance. Under the circumstances, the silent affirmance rests on independent and adequate state law grounds,

---

[8] In Florida, exhaustion of rule 3.850 claims includes an appeal from the denial thereof. *See Leonard v. Wainwright*, 601 F.2d 807 (5th Cir. 1979).

foreclosing federal review of Allen's grounds.[9] *See Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.

Ct. 2590, 115 L. Ed. 2d 706 (1991) (adopting look through presumption).

Although Allen also points to his ensuing state habeas application, he could not

circumvent the applicable state bar via the state's habeas remedy. Failing to raise his grounds

in his first rule 3.850 motion and then appeal the ruling thereon, Allen defaulted grounds two

through six.

Claims that are procedurally defaulted in state court are not reviewable by this Court

unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright

v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), or can establish the kind of

fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the

conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477

U.S. at 496. Cause must ordinarily be something external to the defense. *Marek v. Singletary*,

62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See

Edwards v. Carpenter*, 529 U.S. 446 at 453, 120 S.Ct. 1587(ineffective assistance of counsel

claim asserted as cause for procedural default of another federal claim could itself be

procedurally defaulted).

Allen did not allege valid cause to excuse his default in state court, and any such cause

allegation is barred by the two-year time limit of rule 3.850, *see Whiddon v. Dugger*, 894 F.2d

1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S.

834, (1990), and the state's successiveness bar. When he filed his untimely and successive

3.850 motion, the state postconviction court applied the two-year limit and the successive

---

[9] *E.g., Bolender v. Singletary*, 60 F.3d 727, 729 (11th Cir. 1995)(applying procedural bar to claim raised in a successive application).

petition doctrine. Not showing cause, Allen cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Even if Allen could show valid cause, Allen does not plead sufficient facts that demonstrate actual prejudice will result if his grounds are not addressed on the merits. Nor does he meet the fundamental miscarriage of justice exception. He does not allege the existence of new and reliable evidence of actual innocence not available at the time of his trial as a gateway to avoid the bar under *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Accordingly, the Court orders:

That Allen's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Allen and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S.

322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 19, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Johnnie Allen